IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENDA MARBLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| ) | No. 12 C 3035 |
| v. ) | |
| ) | Judge John A. Nordberg |
| CAROLYN COLVIN, Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This is an appeal of the denial of social security disability benefits pursuant to 42 U.S.C. § 405(g). Plaintiff Brenda Marble, who is now 51, suffers from (among other things) hypertension, anemia, depression, anxiety, and chronic post-traumatic stress disorder ("PTSD"), the latter condition resulting in part from witnessing a murder.

Plaintiff initially applied for benefits on July 27, 2007. After various procedural delays, a hearing was held before administrative law judge Helen Cropper on May 6, 2010. On September 22, 2010, the ALJ issued a 22-page opinion finding that Ms. Marble was not disabled. The ALJ gave lesser weight to certain doctor's opinions and concluded that plaintiff's experience in babysitting for her grandchildren in her home showed that she had the physical and mental abilities to go out and perform this type of job in the job market.

Plaintiff appealed the ALJ's decision to the Appeals Council. On November 23, 2010, before the Appeals Council had made any ruling, plaintiff's attorney wrote a letter to the Appeals Council stating that it had just come to her attention that on May 30, 2010, plaintiff's youngest son had murdered her eldest son. (Pl. Mem. at 9; R. 371, 834.) The letter further stated: "Not surprisingly Ms. Marble who alleged depression and post traumatic stress as disabling impairments is even more depressed now." (R. 371.)

On February 24, 2012, the Appeals Council issued a final decision denying plaintiff's appeal. The decision is 3 pages long, but appears to be a form document with no explanation other than the following statement:

> In looking at your case, we considered the reasons you disagree with the decision and additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(R. 1-2.) The additional evidence referred to was an October 15, 2010 intake evaluation by Integrative Psyche Services, S.C. and a January 14, 2011 Mental Impairment Questionnaire by a therapist. (R. 828-841.) This evidence documented plaintiff's attempt to get therapy after her son's murder.

Now before this Court are the parties' motions for summary judgment. Plaintiff's main argument is that the evidence relating to her mental deterioration resulting from the murder of one of her sons by her other son was new and material evidence that should have been considered by the Appeals Council. She also argues that the ALJ's decision (which did not consider this new evidence) contains a number of specific errors regarding how the evidence was weighed and evaluated.

In analyzing the first argument, we turn to *Farrell v. Astrue*, 692 F.3d 767 (7th Cir. 2012). There, the Seventh Circuit analyzed the "new and material" standard regarding evidence submitted to the Appeals Council after the ALJ decision was already issued. The Appeals Council in that case had summarily denied the plaintiff's claim using the same conclusory paragraph we just quoted above. *Id.* at 770. The Seventh Circuit noted that, under 20 C.F.R. § 404.970(b), the Appeals Council must evaluate any evidence that is "new and material." *Id.* at 771. Under earlier Seventh Circuit precedent, if the Appeal Council finds that evidence is new and material but then goes on to hold that the new evidence does not change the conclusion reached by the ALJ, then the plaintiff later on appeal may not seek review of this determination regarding the new evidence. However, if the Appeals Council finds the evidence is *not* new and material, then the plaintiff may challenge this decision in court. *Id.* In *Farrell*, the Seventh Circuit noted that the conclusory language quoted above was ambiguous regarding which of these two scenarios applied. *Id.* The Seventh Circuit concluded that the best interpretation of the conclusory language was to assume that the Appeals Council had concluded that the evidence was not new or material – *i.e.* the second scenario. Accordingly, the Seventh Circuit in *Farrell* went on to review whether the proffered new evidence was new and material and found that it was because it "fills in [an] evidentiary gap" in the ALJ's opinion. *Id.*[1]

Based on *Farrell*, we must determine whether the evidence relating to this tragic fratricide and its effect on plaintiff is new and material. We conclude it is. The parties do not point to any specific legal test for assessing whether evidence is new. It undisputed that the evidence was not reviewed by the ALJ. The Commissioner argues that although these events (both the murder of the one son and the subsequent imprisonment of the other son) are tragic,

---

[1]*See also Calderon v. Astrue*, 2013 WL 139698, *2 (S.D. Ind. Jan. 11, 2013) (following *Farrell* and concluding that a Migraine Report was new and material justifying a remand).

-2-

they "do not excuse [plaintiff's] counsel's failure to produce evidence in a timely manner." (Def. Mem. at 10.) The Commissioner questions why plaintiff's counsel would have been unaware of the murder and of plaintiff's deteriorating mental condition. *Id.* at 11.

In her reply brief, plaintiff explains that she did not immediately inform her counsel because she was grief-stricken. Here is the full explanation:

> The plaintiff was living a nightmare and had enough difficulty getting through the day. She did not think to call counsel and tell counsel that her youngest son was incarcerated for killing her eldest son and that there were additional medical records [that] counsel should request. Defendant doesn't explain why counsel should have been aware of these events. It was not until the Plaintiff received her ALJ denial that she spoke with counsel. It was at that time that counsel was informed about the tragic events and how they had affected the Plaintiff and that there was a new doctor and new medical evidence. To expect Ms. Marble to think of calling counsel and explain that her younger son was incarcerated for killing her eldest son while her mental state was deteriorating is not reasonable.

(Pl. Repl. at 1-2.) We agree. We have no reason to question this explanation. There is no indication in the record to suggest that counsel, once informed, was dilatory in bringing the evidence to the attention of the Commissioner.

We turn next to materiality. Evidence qualifies as material if there is "a 'reasonable probability' that the Commissioner would have reached a different conclusion had the evidence been considered." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). The new evidence here meets this standard for two basic reasons. First, based solely on the calamitous and unusual nature of these events, it is reasonable to assume (absent evidence to the contrary) that a person already depressed would become more depressed and suffer a deterioration in her mental condition. (Plaintiff has also alleged she suffers from PTSD after having seen a different murder several years before.) The Commissioner questions why plaintiff waited several months to see a therapist. (Def. Mem. at 15.) But we do not find that this fact by itself undermines a finding of materiality. There is no dispute that this tragic event took place. How a particular person should react under these circumstances – and whether she would immediately seek relief with a professional therapist – are not questions which have easy or automatic answers. In sum, we have no basis now to question the assertion that these events caused plaintiff to become more depressed.

Second, in her reply brief, plaintiff informed the Court that, in addition to filing this case, she had separately filed a second application for disability benefits covering the time period after the ALJ's decision and that, on November 17, 2012, the Commissioner issued a "fully favorable decision" on this second application finding plaintiff disabled as of September 23, 2010 – *i.e.* the

day after the ALJ's decision. (Pl. Reply at 2.)[2] Plaintiff argues that this second determination proves that if the Commissioner "had in fact considered the new evidence he would have reversed the ALJ's decision based on that evidence." We find this argument persuasive. Although we do not have any details before us about the specific reasons why the Commissioner found plaintiff disabled, it is a reasonable inference that the new evidence tipped the balance leading the Commissioner to find plaintiff disabled. In sum, we find that the new evidence must be evaluated by the Commissioner on remand and that it would be unproductive at this point to further analyze plaintiff's second argument regarding the adequacy of the ALJ's decision, which did not consider this evidence.

For all the above reasons, we grant plaintiff's motion for summary judgment [Dkt. # 14] and deny the Commissioner's motion for summary judgment [Dkt. # 28]. This case is remanded for an evaluation of this new evidence. In any subsequent ruling, the Commissioner should also provide an explanation for how its ruling in the present case is consistent with its later finding that plaintiff is disabled.

**ENTER:**

JOHN A. NORDBERG
Senior United States District Court Judge

DATED: December 9, 2013

---

[2]Plaintiff is thus now receiving monthly disability benefits, meaning that this case now focuses only on the time period before September 23, 2010.